## Commonwealth v. Baldwin.

*J. R. K. Scott*, for motion.

*John H. Maurer*, Assistant District Attorney, and *John Monaghan*, District Attorney, contra.

ALESSANDRONI, J., May 8, 1929.—This is a motion to quash the bill of indictment. Joseph L. Baldwin, being Assistant Director of Public Health, on Nov. 8, 1927, the day fixed by law for the election of municipal officers of the City of Philadelphia, is charged in the first count with being and appearing in a certain polling-place in the 31st Election District of the 26th Ward of the City of Philadelphia for a purpose and purposes other than the purpose of marking and depositing his ballot as an elector of said election district as speedily as it reasonably could be done . . . and was in said polling-place and place of voting in said election district for purposes of offering to assist and of assisting divers electors of said election district who then and there appeared and applied for ballots then and there to vote therein at said election, in the preparation and marking of their respective ballots; contrary to the form of the act of the general assembly, etc.

He is charged in the second count with having assisted divers electors and voters of said election district to prepare and mark the votes and ballots then and there cast and voted by them in said election district at said election. The third count charges substantially the same offense.

The basis of this prosecution is the prohibition contained in section 23, article XIX, of the Act of June 25, 1919, P. L. 581, entitled "An Act for the Better Government of Cities of the First Class of this Commonwealth," which provides: "No officer, clerk or employee of any city of the first class, or of any department, trust or commission thereof, shall be a member of, or delegate or alternate to, any political convention, nor shall he be present at any

such convention except in the performance of his official duty. No officer, clerk or employee of any city of the first class, or of any department, trust or commission thereof, shall serve as a member of, or attend the meetings of, any committee of any political party, or take any active part in political management or in political campaigns, or use his office to influence political movements or influence the political action of any other officer, clerk or employee of any such city, department, trust or commission. No officer, clerk or employee of any city of the first class shall in any way or manner interfere with the conduct of any election, or the preparation therefor at the polling-place, or with the election officers while counting the vote or returning the ballot-boxes, books and papers to the place provided by law for that purpose, or be within any polling-place save only for the purpose of marking and depositing his ballot as speedily as it reasonably can be done, or be within fifty feet thereof, except for purposes of ordinary travel or residence, during the period of time beginning with one hour preceding the opening of the polls for holding such election and ending with the time when the election officers shall have finished counting the votes and have left the polling-place for the purpose of depositing the ballot-boxes and papers in the place provided by law for that purpose, excepting only police officers, who may temporarily approach or enter the polling-place in order to make any arrest permitted by law or for the purpose of preserving order, and in each such case only long enough to accomplish the duties aforesaid, after which the said officers shall at once withdraw."

In his motion to quash, defendant states:

1. The first, second and third counts of the bill fail to set forth the commission of any offense under the law.

2. That the Act of June 25, 1919, P. L. 581, under which the bill of indictment is drawn, is unconstitutional and invalid, in so far as it creates or defines the offense or offenses sought to be charged in the bill of indictment.

3. That said act is unconstitutional because no notice is contained in the title of the act of the creation of the offense of taking an active part in political campaigns while being an employee of a city of the first class.

Article III, section 3, of the Constitution of Pennsylvania provides: "No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in the title."

This act is constitutional. Its title, "An Act for the Better Government of Cities of the First Class of this Commonwealth," is all-embracing and comprehensive of the duties, functions, responsibilities and liabilities of those entrusted with the machinery of the government. It embraces but one subject, namely, the government of cities of the first class. This subject concerns the operation of the administrative government. It defines not only the positive duties of those charged with the discharge of them, but also the prohibition against the behavior of city officials and employees deemed detrimental to good municipal government. All presumptions are in favor of the validity of statutes, and courts are not to be astute in finding objections to them.

It is urged by the defendant that the title of the act is defective, in that it fails to reveal from a fair and comprehensive reading of it the creation of an offense for political activity on the part of employees of the city. It is to be presumed that all officers and employees of the city desirous of faithfully discharging their duties have, prior to the assumption of their respective offices, familiarized themselves with the provisions of this act. If they have failed in so doing and run afoul of its provisions, they will derive scant comfort in their search for precedent and authority holding this act to be unconstitutional. The cases are numerous in Pennsylvania holding that a title need not embody

all the distinct provisions of the bill nor serve as an index or digest of its contents, but that it is sufficient if the title fully gives notice of the real subject of the bill so as reasonably to lead to an inquiry into what is contained in the body of the bill: Booth & Flinn, Ltd., *v.* Miller, 237 Pa. 297. See, also, White on Constitution of Pennsylvania, 216. The unity of the subject of the statute is to be determined by its paramount purpose rather than the details through which that purpose is to be accomplished. The subject may have but one object, while the measures necessary for the attainment of that object may necessarily embrace many subordinate subjects, differing in their nature and particular effect, yet all contributing to and comprised within the principal subject: Sugar Notch Borough, Appeal of Warrier Run School District, 192 Pa. 349. Everything which the nature of the subject of a title reasonably suggests, as necessary or appropriate for the accomplishment of its expressed purpose, is sufficiently indicated by such title: Com. *v.* Jones, 4 Pa. Superior Ct. 362.

The Act of June 7, 1915, P. L. 878, known as the Escheat Act, whose title, "An act providing for the escheat of deposits of money or property of another received for storage or safekeeping, etc.," specifies with great detail for the escheat of dividends, profits, debts and interest on debts of corporations, excepting from its provisions certain associations and property, contains no reference whatever to any penalty for the violation of its provisions. Section 13 thereof, however, declares it a misdemeanor for any one to neglect or refuse to testify to any lawful question, etc., fixing a penalty therefor. Answering the attack on its constitutionality because of the insufficiency of the title, the court said: "The title is sufficiently broad to cover the various provisions of the statute relating to the matters here in controversy, including the fact that certain penalties are provided for violation of its terms. The first clause of the title is general, providing 'for the escheat of deposits of money or property of another received for storage or safekeeping.' This language is sufficient to indicate the purpose of the legislation, a necessary or appropriate procedure for the accomplishment of its purpose and fairly to give notice and reasonably lead to an inquiry as to the contents of the body of the law. This court has expressly decided that the constitutional provisions relating to titles of acts of assembly do not require the title to give notice of penalties or other punishment for violation:" Germantown Trust Co. *v.* Powell, 265 Pa. 71; in accord, Com. *v.* Sellers, 130 Pa. 32; Com. *v.* Muir, 180 Pa. 47. That a title general in terms and relating to but one subject-matter should contain a complete index to the provisions contained in the act is unnecessary: Fredericks *v.* Penna. Canal Co., 109 Pa. 50; Myers et al. *v.* Com., 110 Pa. 217; Com. *v.* Charity Hospital of Pittsburgh, 198 Pa. 270; Rose *v.* Beaver County, 204 Pa. 372.

The authorities submitted by the defendant, none of which appear applicable to the real question here presented, are not inconsistent with the rule which in our opinion governs this question.

In conclusion, it is not inappropriate to direct attention to the fact that provisions similar to section 23 were incorporated in the Act of June 1, 1885, P. L. 37, commonly referred to as the Bullitt Bill, followed by the Act of Feb. 15, 1906, P. L. 19, known as the Shern Bill. The title of the Bullitt Bill is "An Act to Provide for the Better Government of Cities of the First Class in the Commonwealth."

The title of the Shern Bill is the usual title of an amendatory act, which in this case, of necessity, refers to the article sought to be amended, specifically stating the character of the amendment. The Bullitt Bill, with a title similar

to the one in question, served as the organic law of the city's government for over thirty-four years without question. While these circumstances are not conclusive in its favor, yet they are a strong argument that it is not so plainly repugnant to the Constitution as it must be to warrant the court in declaring it void.

And now, to wit, May 8, 1929, the motion to quash is overruled.